UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 2:24-CR-00017-1-JRG-CRW |
| ) | |
| CHYNNA BROWN-HAMPTON ) | |

### **MEMORANDUM OPINION AND ORDER**

This matter is before the Court on United States Magistrate Judge Cynthia R. Wyrick's Report and Recommendation [Doc. 49] and Defendant Chynna Brown-Hampton's Objection to the Report and Recommendation [Doc. 51], to which the United States has not responded. For the reasons herein, the Court will overrule Ms. Brown-Hampton's objections.

### I.   BACKGROUND

Ms. Brown-Hampton does not object to the factual findings in Judge Wyrick's report and recommendation except to challenge the credibility of certain portions of Sergeant William Saulsbury's testimony and the factual findings that Judge Wyrick arrived at by relying on his testimony. The Court, for the reasons it will go on to explain, considers Sergeant Saulsbury's testimony to be credible, and it therefore adopts Judge Wyrick's findings of fact as set forth herein:

> On April 26, 2018, a criminal complaint was filed charging Defendant with possession with intent to distribute 50 grams or more or methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A) and possession of a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A). The basis for these charges was methamphetamine and firearms that officers located during a search of Defendant's person on April 25, 2018, at the Wood Spring Suites in Johnson City, Tennessee.
>
> . . . .

Sergeant William Saulsbury ('Sgt. Saulsbury') testified that on April 25, 2018, he was working as a patrol officer for the Johnson City Police Department. At approximately 1:30 p.m., Sgt. Saulsbury responded to a call at the Wood Spring Suites in Johnson City, Tennessee unrelated to Defendant. While there, an unknown individual approached Sgt. Saulsbury and stated there was a large amount of marijuana in room 425. Based upon this tip, Sgt. Saulsbury decided to attempt a 'knock and talk' with the room's occupants. He then proceeded to room 425 and knocked on the door. Sgt. Saulsbury testified that a male occupant answered the door and stepped outside of the room to speak with Sgt. Saulsbury, closing the door behind him. Defendant exited the hotel room a short time later, joining Sgt. Saulsbury and the male occupant in the hallway. During their conversation, the male occupant told Sgt. Saulsbury that he had a quarter of an ounce of marijuana in the hotel room. At that point, Sgt. Saulsbury requested a special investigation squad to respond to the scene.

Sgt. Saulsbury testified that he advised Defendant and the male occupant of their *Miranda* rights, and they both stated they understood their rights. He then asked for consent to search the hotel room and both Defendant and the male occupant gave the requested consent. During the search of the hotel room, officers located digital scales with a small amount of white powder residue and a marijuana grinder. They did not locate any marijuana. Sgt. Saulsbury testified that Defendant quickly took full ownership of the drug paraphernalia. As a result, Sgt. Saulsbury detained Defendant on probable cause of possession of drug paraphernalia. Sgt. Saulsbury testified that the male occupant then asked to leave and was permitted to do so because no marijuana was found, and Defendant had taken responsibility for the paraphernalia, leaving officers with no reason to hold the male occupant.

After the male occupant left, Sgt. Saulsbury testified he was holding Defendant in the hallway of the hotel while other officers conducted a K9 free air sniff of Defendant's vehicle in the parking lot. At that time, Defendant asked if she could return her purse to the hotel room, a request which Sgt. Saulsbury initially granted. Defendant had been sitting on the hallway floor and when she rose to her feet and began walking towards the hotel room door Sgt. Saulsbury saw a $20 bill fall from the waistband of Defendant's pants. Sgt. Saulsbury called Defendant's attention to the $20 bill. At that time, Defendant became very nervous and agitated. Money continued to fall from Defendant's waistband, and at that point, she pulled a large wad of money out of her pants and handed it to Sgt. Saulsbury, stating it was from her hair styling business. Sgt. Saulsbury determined that it was not appropriate for Defendant to reenter the hotel room and called for a female officer to come and conduct a search of Defendant's person.

When the female officer arrived, she asked Defendant if she had anything illegal on her person, at which time Defendant said that she had both firearms and narcotics on her person. The female officer then proceeded to search Defendant and found a .40 caliber pistol, a .357 revolver, various quantities of suspected methamphetamine, marijuana, and cocaine, and over $20,000 in cash. Defendant

admitted ownership of everything found during the search and was placed under arrest.

On cross examination, Sgt. Saulsbury acknowledged that his report of the incident had omitted the fact that Defendant took ownership of the drug paraphernalia discovered in the hotel room occupied by Defendant and her male companion. He explained that at the time of the incident he was a fairly new patrol officer and that he had focused his report more on the firearms and amounts of narcotics and cash that were found, rather than the paraphernalia. While it would have been preferable for Sgt. Saulsbury's report to note that Defendant took responsibility for the drug paraphernalia and that Defendant was being held on probable cause for the offense of possession of drug paraphernalia, the Court finds that Sgt. Saulsbury's explanation for this omission and his testimony to be credible. Specifically, Sgt. Saulsbury's testimony that Defendant accepted full ownership of the drug paraphernalia is consistent with Sgt. Saulsbury permitting the male occupant of Defendant's hotel room to leave the scene after the paraphernalia was discovered.

[R&R at 1–4 (internal citation and citation omitted)].

## II. LEGAL STANDARD

When reviewing a magistrate judge's recommendation on a dispositive issue, the Court conducts a de novo review of that recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3). A magistrate judge's recommendation on a motion to suppress evidence is dispositive nature, *see United States v. Raddatz*, 447 U.S. 667, 673 (1980) ("Certain dispositive motions, including a motion . . . to suppress evidence in a criminal case, are covered by § 636(b)(1)(B)." (internal quotation marks omitted)), and to the extent that it contains legal conclusions about the existence of probable cause, it is subject to a de novo review, *United States v. Humphries*, 308 F. App'x 892, 894 (6th Cir. 2009); *United States v. Fitzmaurice*, No. 3:22-CR-136-CHB, 2023 WL 3183313, at *2 (W.D. Ky. May 1, 2023). A de novo review requires the Court "to give fresh consideration" to the issues before it, *Raddatz*, 447 U.S. at 675 (quotation omitted), and in doing so, the Court reaches "the ultimate determination of the matter" through its own judicial discretion, *id.* at 675–66.

3

To the extent, however, that the report and recommendation contains factual findings, the Court reviews those findings for clear error. *Humphries*, 308 F. App'x at 894; *Fitzmaurice*, 2023 WL 3183313 at *2. "A factual finding is clearly erroneous when, although there may be evidence to support it, the reviewing court, utilizing the entire evidence, is left with the definite and firm conviction that a mistake has been committed." *United States v. Shank*, 543 F.3d 309, 312–13 (6th Cir. 2008) (quotation omitted). The Court reviews a magistrate judge's credibility determinations under this same clearly-erroneous standard. *See United States v. McCauley*, 548 F.3d 440, 447 (6th Cir. 2008) ("To attack a district court's suppression hearing credibility determination, a defendant must establish that the district court's conclusion was clearly erroneous." (citation omitted)). After the Court's review of the report and recommendation, it "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

### III. ANALYSIS

The Fourth Amendment of the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. When a police officer performs a search that violates a defendant's Fourth Amendment rights, that defendant may move to exclude any evidence that the officer discovered at the time of the search. Fed. R. Crim. P. 12(b)(3)(C); *United States v. Haygood*, 549 F.3d 1049, 1053 (6th Cir. 2008). "It is well settled that in seeking suppression of evidence the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression." *United States v. Feldman*, 606 F.2d 673, 679 n.11 (6th Cir. 1979). But warrantless searches and seizures are presumptively unreasonable under the Fourth Amendment, *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993); *Payton v. New York*,

4

445 U.S. 573, 586 (1980), so once a defendant shows that the government has performed a warrantless search or seizure, "[t]he government has the burden of proving the legality of [the] warrantless search," *United States v. Herndon*, 501 F.3d 683, 692 (6th Cir. 2007) (citation omitted), by a preponderance of the evidence, *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974).

"[T]he Fourth Amendment's full complement of protections . . . applies to hotel rooms." *United States v. Riley*, 858 F.3d 1012, 1018 (6th Cir. 2017) (internal quotation marks and quotation omitted). A police officer, however, may conduct a valid warrantless search—and lawfully rely on any evidence that he discovers during the search—if he first obtains voluntary consent to search the premises. *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). Valid voluntary consent can come either from an individual who has actual authority over the premises or from an individual who has apparent authority over the premises. *United States v. Purcell*, 526 F.3d 953, 962–65 (6th Cir. 2008); *see Matlock*, 415 U.S. at 171 (stating that evidence of voluntary consent "is not limited to proof that consent was given by the defendant, but [the United States] may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises" (footnote omitted)).

In this case, the record establishes that Sergeant Saulsbury obtained consent from the hotel room's two co-occupants—the male occupant and Ms. Brown-Hampton—before he and other officers searched that room, and Ms. Brown-Hampton does not dispute the lawfulness of that search, during which the officers discovered digital scales, residual white powder, and a marijuana grinder. [R&R at 3]. She does, though, dispute Sergeant Saulsbury's credibility, and she argues that Judge Wyrick wrongly relied on Sergeant Saulsbury's testimony because, in Ms. Brown-Hampton's view, it was untrustworthy:

5

> Sgt. Saulsbury testified that he . . . had probable cause to detain Ms. Brown-Hampton . . . due to her taken ownership of the drug paraphernalia. . . . While testifying on cross-examination, Sgt. Saulsbury admitted that in his incident report he failed to include that Ms. Brown-Hampton took ownership of paraphernalia that was found in the room and that she was detained for that reason. . . . [H]e testified that anything important to the investigation should be put in the report. Sgt. Saulsbury's excuse for failing to include such an important part of the investigation was that he had only been an officer for four years. Yet, six years after the incident occurred, with no mention of this important admission of ownership in his report, Sgt. Saulsbury recalls this important detail. . . . . [The] investigation of this matter is inconsistent with the testimony of Sgt. Saulsbury.

[Def's Objs. at 3–4, 5 (citations omitted)]. The upshot of Ms. Brown-Hampton's argument is that, contrary to Mr. Saulsbury's testimony otherwise, Ms. Brown-Hampton never admitted that she owned the drug paraphernalia inside the hotel room and that Sergeant Saulsbury therefore lacked probable cause to detain her.

Sergeant Saulsbury, however, explained why he did not include Ms. Brown-Hampton's confession in his report, and Judge Wyrick found his explanation to be credible and consistent with the evidence as a whole:

> [Sergeant Saulsbury] explained that at the time of the incident he was a fairly new patrol officer and that he had focused his report more on the firearms and amounts of narcotics and cash that were found, rather than the paraphernalia. While it would have been preferable for Sgt. Saulsbury's report to note that Defendant took responsibility for the drug paraphernalia and that Defendant was being held on probable cause for the offense of possession of drug paraphernalia, the Court finds that Sgt. Saulsbury's explanation for this omission and his testimony to be credible. Specifically, Sgt. Saulsbury's testimony that Defendant accepted full ownership of the drug paraphernalia is consistent with Sgt. Saulsbury permitting the male occupant of Defendant's hotel room to leave the scene after the paraphernalia was discovered.

[R&R at 4]. Judge Wyrick "function[ed] as the factfinder at the suppression hearing," *United States v. Simmons*, 174 F. App'x 913, 918 (6th Cir. 2006), and as the factfinder, her credibility determinations are entitled to "great deference," *Humphries*, 308 F. App'x at 895 (citing *United States v. Hill,* 195 F.3d 258, 264–65 (6th Cir. 1999), because she "was in the best position to

6

make them," *id.* at 894 (citing *Hill*, 195 F.3d at 264–65); *see generally Raddatz*, 447 U.S. at 676 ("Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, choose[s] to place on a magistrate's proposed findings." (citation omitted)). The factual finding in question here is, significantly, a "[f]inding[] of fact anchored in [a] credibility assessment[]," *United States v. Taylor*, 956 F.2d 572, 576 (6th Cir. 1992); that is, Judge Wyrick, after deciding that Sergeant Saulsbury's testimony was credible, found that Ms. Brown-Hampton "took full ownership of [the drug paraphernalia]" in the hotel room, [R&R at 6]. Because her "factual finding[] rest[s] in large part on [a] credibility determination[]," it is entitled to "even greater deference," *United States v. Oliver*, 397 F.3d 369, 374 (6th Cir. 2005) (quotation omitted).

But even so, "a court's decision to credit testimony can constitute clear error if the testimony was implausible, internally inconsistent, or against the weight of the evidence, such that no reasonable fact-finder would credit it," *United States v. Gray*, 182 F. App'x 408, 411 (6th Cir. 2006) (citing *Anderson v. Bessemer City*, 470 U.S. 564, 573–75 (1985)), and in this vein, Ms. Brown-Hampton contends that Sergeant Saulsbury's testimony is "inconsistent" with the record for two main reasons. First, he points out that the criminal complaint [Doc. 3]—alongside which Task Force Officer Matthew Keller, who was present at the scene during the search and seizure at Wood Spring Suites, filed an affidavit—contains no mention that Ms. Brown-Hampton admitted to ownership of the drug paraphernalia. [Def.'s Objs. at 4]. But Officer Keller's silence as to any admission of ownership on Ms. Brown-Hampton's part does not create an internal inconsistency between the record and Sergeant Saulsbury's testimony. If Officer Keller had attested that Ms. Brown-Hampton expressly denied ownership of the drug

7

paraphernalia, *then* his affidavit would have clashed with Sergeant Saulsbury's testimony, but Officer Keller made no such attestation.

Second, Ms. Brown-Hampton asserts that the record offers another permissible view of the evidence and that this view renders clearly erroneous Judge Wyrick's decision to believe Sergeant Saulsbury's testimony and to conclude from it that Ms. Brown-Hampton confessed to ownership of the drug paraphernalia. "If Ms. Brown-Hampton was seemingly in the room stuffing her outfit with money, guns, and drugs," she maintains, "why would she then take ownership of the drug paraphernalia? This quickly [would have] defeated her effort to hide the contraband." [Def.'s Objs. at 4]. The Court, for argument's sake, can posit several possible reasons why. Maybe she felt the dollar bills slipping from her waistband and realized the jig was up. Maybe she felt the officers would treat her leniently if she admitted to ownership of the drug paraphernalia but no actual drugs or firearms were found inside. Or maybe she resigned herself to the possibility that officers would eventually search her person after they discovered the drug paraphernalia in the hotel room.

As the factfinder, Judge Wyrick was free to credit or discredit any of these possibilities, but even if Ms. Brown-Hampton, with her rhetorical question, offers a permissible view of the evidence, it would not mean—without more—that Judge Wyrick clearly erred by choosing to rely on Sergeant Saulsbury's testimony as an equally permissible view of the evidence. *See United States v. Navarro-Camacho*, 186 F.3d 701, 708 (6th Cir. 1999) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." (citing *Hernandez v. New York*, 500 U.S. 352, 369 (1991))); *see also United States v. McCallister*, 39 F.4th 368, 373 (6th Cir. 2022) ("Whether the odor instead could have been from a legal substance like hemp" and not from marijuana, "as [the defendant] suggests, at best

presents us with 'two permissible views of the evidence,'" and "[t]hat is an insufficient basis upon which to reverse a district court's factual finding." (quoting *Anderson*, 470 U.S. at 574)).

In sum, under the highly deferential standard of review that governs Judge Wyrick's credibility determinations and factual findings, the Court does not have "the definite and firm conviction that a mistake has been committed." *Shank*, 543 F.3d at 312–13 (quotation omitted). And because Ms. Brown-Hampton does not argue that the officers lacked probable cause to search and seize her person even if she admitted to ownership of the drug paraphernalia, the Court's analysis is at an end, and the United States has therefore met its burden of proving the legality of the officers' search and seizure by a preponderance of the evidence.

## IV. CONCLUSION

Having reviewed Judge Wyrick's credibility determinations and factual findings under a clearly-erroneous standard of review, the Court agrees with Judge Wyrick's recommendation, and, therefore, Ms. Brown-Hampton's Objection to the Report and Recommendation [Doc. 51] is **OVERRULED**. The Court **ACCEPTS IN WHOLE** the report and recommendation [Doc. 49] under 28 U.S.C. § 636(b)(1) and Federal Rule of Criminal Procedure 59(b). For the reasons in the report and recommendation, which the Court adopts and incorporates into this Order, Ms. Brown-Hampton's Motion to Suppress [Doc. 41] is **DENIED**.

So ordered.

ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE